**GREAT AMERICAN INSURANCE COMPANY et al.**

**v.**

**FOUR SEASONS MARINA, INC.**

Hamilton County Municipal Court.

No. 94 CV 04917.

Decided Oct. 17, 1994.

44

*James Frank McDaniel,* for plaintiffs.

*Thomas R. Schoenfeld,* for defendant.

MICHAEL K. ALLEN, Judge.

## PROCEDURAL POSTURE

Plaintiffs, Great American Insurance Company and Linda Sue Herbert, filed their complaint on February 23, 1994. Plaintiff Great American Insurance Company seeks judgment against defendant in the amount of $6,277, plus interest and costs, and plaintiff Linda Sue Herbert seeks judgment against defendant in the amount of $875, plus interest and costs. Defendant, Four Seasons Marina, Inc., filed its answer on March 18, 1994. Trial was held on August 11, 1994.

## FACTS

Plaintiff Linda Sue Herbert (hereinafter referred to as "Herbert") has rented dock space during the summer months from defendant Four Seasons Marina (hereinafter referred to as "Four Seasons") since 1982, with the exception of the years of 1990 and 1991, when she was living in Chicago. During this period of time, Four Seasons had a policy of employing security personnel at night to help ensure the safety of the tenants and their possessions and to keep people from wandering the docks.

While she was living in Chicago, Herbert purchased a 1985 Marine Trader, a vessel thirty-eight feet in length, hereinafter referred to as "the main boat." Furthermore, she purchased a 1992 Avon dinghy to be used in conjunction with the main boat and an assortment of ancillary items to the dinghy. In 1992, Herbert returned to Cincinnati from Chicago and brought the main boat, the dinghy, and the ancillary equipment with her.

Sometime shortly after her arrival in Cincinnati, Herbert again decided to rent dock space at Four Seasons based on her past favorable experience with that marina. She then proceeded to take the necessary actions to obtain a lease at Four Seasons, such as obtaining insurance, and she then executed a summer

moorage contract. While the contract provides that the lessee is required to be issued a marina handbook and to conform to its rules and regulations, Herbert is ambiguous about ever reading the marina handbook. In addition to the rules and regulations of the marina, the marina handbook also states in Section 6 that: "Security personnel have been employed to provide protection services within the marina and parking lots."

After the expiration of her summer moorage contract, rather than putting her main boat in dry dock, which she had previously done while living in Cincinnati, she decided to live on her boat during the winter months. Thus, she executed a winter moorage contract with Four Seasons, which essentially has the same terms and conditions as the summer moorage contract. The employment of security personnel during the winter months at Four Seasons is different, however, as Four Seasons provides security personnel only at night on the weekends during the winter months.

At sometime during the course of the winter moorage contract, but before March 17, 1993, Herbert undertook to do some modifications to her dinghy. In order to work on her dinghy, she removed it from her main boat where it was stored and placed it on a finger of the dock one boat over from her main boat, where she locked it to the dock using a steel cable and a padlock. Upon returning to the marina on March 16, 1993 from a business trip, Herbert noticed that her dinghy was still on the dock where she had left it, but when she returned to the marina the next day from work, the dinghy and all of the ancillary equipment to the dinghy stored on the main boat were missing. Plaintiff then proceeded to notify the proper authorities about the theft and conducted an individual search to try to find the missing goods. Her efforts were fruitless, however, so her insurance company compensated her for her losses. Her insurance company at the time was plaintiff Great American Insurance Company, who, along with Herbert, now seeks to recover against defendant Four Seasons on theories of breach of contract and negligence.

### DISCUSSION OF BREACH OF CONTRACT CLAIM

■ The court finds that a contractual duty to provide security existed in the present case. Even if Herbert failed to read the marina handbook at the time of the winter moorage contract, the oral statements made by defendant's agent, Dennis Schalk, at or near the time the contract was entered into and the explicit statements in the contract dealing with Herbert's duty to comply with the rules and regulations of Four Seasons clearly incorporates the marina handbook into the contract.

*Bolling v. Clevepak Corp.* (1984), 20 Ohio App.3d 113, 20 OBR 146, 484 N.E.2d 1367, is an illustrative case which deals with the incorporation into a contract of

an employee handbook provision providing for severance pay. The general principles outlined in *Bolling* apply to the case at bar. The court in *Bolling* found that when oral or written modifications of the original employment contract satisfied the paradigm elements essential to contract formation—*i.e.*, offer, acceptance and consideration—binding obligations arose. In the present case, these elements clearly have been satisfied.

In the case at bar, the contract states specifically, under the use and occupancy section, that "the boat owner, by signing this contract, *agrees to use and occupy the rented slip in a careful, safe and proper manner and to comply with the rules, regulations, and orders of Four Seasons.*" (Emphasis added.) Furthermore, this clause is basically restated in the promissory element of the contract, which makes the contract binding. An examination of the rules and regulations of Four Seasons as contained in the marina handbook reveals under the title of "general regulations of the marina" that "[s]ecurity personnel have been employed to provide protection services within the marina and parking lots." While general, the provisions in the marina handbook are used to regulate the conduct of Herbert and other boat owners, and the statement regarding security personnel incorporates a term and condition into the contract which obligates Four Seasons. As Four Seasons prepared this document and was fully aware of the statements there included, it can only be concluded that Four Seasons intended this to be part of the contract. In addition to this written statement providing that security personnel will be employed, Herbert also received general oral assertions to the same effect close to or near the time she was in the bargaining process. Thus, the statement in the marina handbook with regard to the providing of security personnel should be considered as a part of the offer to lease the dock space. Acceptance by Herbert is simply satisfied in the present case of her acceptance of the lease and the consideration to Four Seasons is the payment received. Based on the facts, it can only be concluded that the statement concerning the providing of security personnel at the very least influenced Herbert's decision to lease a dock slip from Four Seasons. All of the essential elements of contract, to wit, offer acceptance and consideration, are present in the case at bar.

■ Since this court has found that a contract existed between Herbert and Four Seasons to provide security, the court now must determine whether that contract has been breached. Again, the provision in the marina handbook regarding security personnel is spelled out on page 6 and it simply provides that: "Security personnel have been employed to provide protection services within the marina and parking lots." It does *not* state that security personnel have been employed *full time* to provide protection services within the marina and the parking lots. The testimony adduced at trial demonstrated that security person-

nel were employed by Four Seasons at the time of the theft. Four Seasons has not breached its contractual obligation to Herbert to provide security. If defendant's statement in the marina handbook had been more explicit as to when security personnel would be present in the parking lots and within the marina, the result would be different. The statement is a general statement and Four Seasons' contractual obligation to Herbert has been fulfilled.

## DISCUSSION OF NEGLIGENCE ACTION

Restatement of the Law 2d, Torts (1965), Section 323, provides that "one who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if: a. His failure to exercise such care increases the risk of harm, or b. The harm is suffered because of the other's reliance upon the undertaking."

■ Clearly, Four Seasons undertook to render security services to Herbert, which it recognized as necessary for the protection of Herbert's property. However, plaintiffs have not demonstrated that Four Seasons failed to exercise reasonable care in performing this undertaking.

■ In order to make this finding, the court is put in a position to determine what is "reasonable security." The court is unable to locate any legal definition of the term "security." However, "security" has been defined in the Random House Dictionary of the English Language (2 Ed.1987), as "precautions taken to guard against crime, attack, sabotage, espionage, etc." Reasonable security must be dependent upon the environment and what the security is intended to accomplish. In other words, is the security to act as a guarantee against theft, or only to serve to deter, and is the object that is being secured a bank, or is it something with many other security measures already incorporated into its defenses, or is it something which is impractical to secure effectively. A quick glance at defendant's Exhibit 1, the aerial photograph of Four Seasons Marina, reveals that the marina could not possibly guarantee that theft would not occur, as entrance to the marina can be gained from the river. Moreover, one must look at the cost-benefit analysis with requiring a substantial increase in the number of security personnel at the marina, in essence forcing the marina to provide security personnel on a twenty-four-hour-a-day basis.

■ Finally, even if the court were to find that Four Seasons breached its duty to provide reasonable security, the court simply cannot find that the element of proximate cause has been satisfied. The case law involving breach of security issues tends to concentrate so much on aspects of reasonable care (the "duty")

concepts, that property managers, owners, and even attorneys tend to lose sight of the fact that proximate cause must be established, linking even the grossest form of negligence to a plaintiff's damages before a viable lawsuit can exist for injuries due to a breach of security standards. Kuhlman, Safe Places?—Security Planning and Litigation (1989).

In attempting to determine when the theft actually took place, it is clear from the testimony presented at trial and Herbert's deposition that no certainty on this point exists. The overwhelming majority of the evidence would certainly suggest that the crime actually occurred during the day when security, in the form of employees and locked gates, existed. Herbert, in her deposition, first stated that the dinghy was present on the dock when she went to work, then she stated that she was unsure of whether or not it was there. Furthermore, a large number of items were stolen from the main boat, upon which Herbert would have had to have been sleeping for the theft to have occurred at night. The number of items alone would have either required frequent trips, or at least two or three people. In addition, the items missing were located on the fly bridge, which would have required a great deal of moving upon the boat. Even more so, the thief would have had to have made a connection between the dinghy which was locked to the dock one slip over from the main boat and the main boat for the thief to have gotten the correct ancillary items. Finally, Herbert states in her deposition that she could not have been sleeping when the people came on her boat.

Plaintiff must establish that the security measures which the [owner] could and should have taken more probably than not would have prevented the harm. Page, The Law of Premises Liability (2 Ed.1988). This has not been established in the case at bar. Plaintiffs have not met, by a preponderance of the evidence, the burden of proof upon the element of proximate cause. The court specifically concludes and finds that Four Seasons did not fail to exercise reasonable care in providing security. Again, even if the court found otherwise, the causal connection between an alleged failure and proximate cause has not been demonstrated.

## FINDING AND JUDGMENT ENTRY

The court finds for defendant and against plaintiffs on both counts. Costs to plaintiffs.

*Judgment for defendant.*